**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**SCOTT MARSHALL,**

        **Petitioner,**

**v.**                                                                    **Civil Action No. 2:07cv70
                                                                        (Judge Maxwell)**

**MARK WILLIAMSON, Warden,[1]**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On September 7, 2007, the *pro se* petitioner filed a Petition for Relief from a Conviction of Sentence by a Person in State Custody under 28 U.S.C. § 2254. On September 9, 2007, the petitioner paid the required $5.00 filing fee. Therefore, on September 11, 2007, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not warranted at that time. Thus, the respondent was directed to show cause why the petition should not be granted.

On November 7, 2007, the respondent filed a Motion for Summary Judgment. Consequently, the Court issued a Roseboro Notice on November 8, 2007. The petitioner filed his response to the respondent's motion on November 30, 2007. Accordingly, this case is before the undersigned

---

[1] In the petition, the petitioner names the State of West Virginia as the respondent. However, the proper respondent in a habeas action is the custodian of the prisoner. See 28 U.S.C. §2243 ("[t]he writ of habeas corpus or order to show cause shall be directed to the person having custody of the person detained"); Rumsfeld v. Padilla, 542 U.S. 426, 434, 435 (2004) (the writ of habeas corpus acts upon the person with the ability to produce the prisoner's body before the habeas court, therefore, the only proper respondent is the petitioner's custodian); Braden v. 30th Judicial Cir. Ct. of Ky., 410 U.S. 484, 494 (1973) "[a] writ of habeas corpus does not act upon the prisoner who seeks habeas relief, but upon the person who holds him in . . . custody). Consequently, the proper respondent in this case is the Warden of the Denmar Correctional Center, Mark Williamson.

for a report and recommendation on the respondent's Motion for Summary Judgment and the petitioner's response.

## I. Procedural History

### A. Petitioner's Conviction and Sentence

In the September 2003 term, a Jefferson County grand jury indicted the petitioner on one count of Attempted Murder. In a separate indictment, the grand jury charged the petitioner with Malicious Assault, Misdemeanor Domestic Battery, Wanton Endangerment Involving a Firearm and Misdemeanor Unlawful Possession of a Firearm.[2]

On January 16, 2004, a jury convicted the petitioner of Attempted First Degree Murder, Malicious Assault and Domestic Battery. Prior to that, the petitioner pleaded guilty to Unlawfully Possessing a Firearm and the State dismissed the Wanton Endangerment charge. On June 15, 2004, the circuit court sentenced the petitioner to the penitentiary for two to ten years on the Malicious Assault conviction, three to fifteen years on the Attempted Murder conviction, twelve months on the Domestic Battery conviction, and one year on the possession charge. The Court ordered the petitioner's sentences to run consecutively.

### B. Direct Appeal

On December 1, 2004, the petitioner filed a direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals ("WVSCA"). In his appeal, the petitioner asserted the following assignments of error:

---

[2] The petitioner alleged broke into his ex-wife's home and brandished about a sawed-off shotgun. Further, the petitioner allegedly kept his ex-wife from calling for help by pulling the phone out of the wall. When the victim was able to get away from the petitioner, she attempted to flee the house through a small kitchen window. As she was attempting to flee, the petitioner allegedly shot the victim in the leg. The victim lost her leg above the knee as a result.

(1) The Court erred in failing to grant a mistrial at the end of the State's case because of improper material in the jury room.

(2) The Court erred in allowing improper 404(b) material into evidence, including;

    (a) evidence of a phone call to stepdaughter,

    (b) evidence of a phone call to victims' friend, and

    (c) domestic violence material from October 12, 2002.

(3) The Court erred in not allowing the defendant to testify on his own behalf and to allow him to present witnesses.

The petitioner's appeal was refused on March 9, 2005.

### C.   <u>Petitioner's State Habeas Petition</u>

The petitioner filed a state habeas petition with the Circuit Court of Jefferson County on April 25, 2005. The state habeas court denied the petitioner's claims on the merits by order entered April 25, 2006. The petitioner appealed that decision to the WVSCA on November 1, 2006. In his appeal, the petitioner asserted the following assignments of error:

(1) The Court erred in failing to grant a mistrial at the end of the State's case because of improper material in the jury room.

(2) The Court erred in allowing improper 404(b) material into evidence, including;

    (a) evidence of a phone call to stepdaughter,

    (b) evidence of a phone call to victims' friend, and

    (c) domestic violence material from October 12, 2002.

(3) The Court erred in not allowing the defendant to testify on his own behalf and to allow him to present witnesses.

(4) Counsel was ineffective because he did not put the petitioner on the witness stand and did not call the witnesses the petitioner requested.

The WVSCA refused the petitioner's appeal on April 3, 2007.

**D. Petitioner's Federal Habeas Petition**

In his federal habeas petition, the petitioner asserts the following grounds for relief:

(1) The Court erred in failing to grant a mistrial at the end of the State's case because of improper material in the jury room.

(2) The Court erred in allowing improper 404(b) material into evidence, including;

    (a) evidence of a phone call to stepdaughter,

    (b) evidence of a phone call to victims' friend, and

    (c) domestic violence material for October 12, 2002.

(3) The Court erred in not allowing the defendant to testify on his own behalf and to allow him to present witnesses.

(4) Counsel was ineffective because he did not put the petitioner on the witness stand and did not call the witnesses the petitioner requested.

**E. Respondents' Contentions**

The respondent denies that any violation of the petitioner's rights has occurred. Moreover, in support of his motion to dismiss, the respondent asserts that federal relief is available only for claims of constitutional dimension. Therefore, to the extent that the petitioner's claims allege violations of state law, the respondent argues that those claims are not cognizable on federal habeas review. In support of his motion for summary judgment, the respondent asserts that there are no genuine issues of material fact with respect to the claims raised in the petition and that the

respondent is entitled to judgment as a matter of law.

## II. Standards of Review

### A. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).

**B.    Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.) cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d

favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).

**B.    Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.) cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d

470, 478 (4th Cir. 2000)). However, the court must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S. C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they

are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

Here, the petitioner's claims were properly presented to the courts of the State. Because the petitioner's claims were adjudicated on the merits in State court, the State's findings of fact and conclusions of law are due the appropriate deference.

### III. Analysis

Although *pro se* petitions are to be liberally construed as set forth in Haines v. Kerner, 404 U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted). A habeas petitioner must come forth with evidence that a claim has merit. Nickerson v. Lee, 971 F. 2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief. Id.

### A. Ground One - Mistrial

In ground one, the petitioner asserts that the trial Court erred in failing to grant a mistrial at the end of the State's case because of improper material in the jury room. In support of this ground, the petitioner asserts that the jury was given unapproved information that did not come to it through testimony or instruction. Specifically, the petitioner asserts that extraneous materials were inadvertently left in the jury room and that at least one juror read those materials and discussed them with another juror. Further, the petitioner argues that because the one document was a criminal statute related to shooting,[3] this information was prejudicial to his defense and a mistrial should have

---

[3] It appears the following "shooting" statute was reviewed by the jurors:

8

been declared.

With regard to this issue, the state habeas court found:

### FINDINGS OF FACT . . .

11. . . . the Court turned next to another issue that had arisen after the jury had left the courtroom at the close of the evidence. Namely, the Court learned some printouts of statutes and their annotations were found on a table in the jury room. Upon examination by the Court and counsel, the paperwork had nothing to do with the charges in the Indictment, but must have been left in the jury room from the last grand jury.

12. Thereafter, the Court and counsel questioned the jurors involved in discussion regarding the statutes and, based upon inquiry, the Court determined that there was not a ground for a mistrial. However, the Court excused the two jurors involved in discussing the statutes and instructed the remaining jurors to discount any conversation overheard regarding the applicable statutes . . .

### CONCLUSIONS OF LAW . . .

C. Finally, the Petitioner asserts that the exposure of the jury to statutes inadvertently left in the jury room following the preceding grand jury had definitions of the crime charged against the Petitioner and prejudiced his case. To the contrary, a fair reading of the trial transcript shows that the jurors that discussed the statutes were under the impression that they pertained to misdemeanor discharging a firearm in alleys, streets, towns, villages and public resorts and felonious transfer of paperwork on a vehicle. Neither statute pertained to the offenses for which the Petitioner was on trial. In addition, the Court cured any possible prejudice to the Petitioner by releasing the jurors in question and giving a curative instruction to the jury prior to closing arguments. Moreover, even if the Court had erred in not declaring a mistrial, habeas corpus relief is only cognizable of errors that are of constitutional dimension or are of

---

**§ 61-2-11. Unlawful shooting at another in street, alley or public resort; penalty**
If any person unlawfully shoots at another person in any street or alley in a city, town or village, or in any place of public resort, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than six months nor more than three years, and be fined not less than one hundred nor more than one thousand dollars.

fundamental nature.

Respondent's Motion (dckt. 10) at Ex. 6 (State's Proposed Order Denying Petitioner's Writ of Habeas Corpus Ad Subjiciendum).

In this circuit, instances of juror misconduct and bias are reviewed for harmlessness. Sherman v. Smith, 89 F.3d 1134, 1139 (4th Cir. 1996). Moreover, whether a mistrial is appropriate is determined based on the facts before the trial court and the decision of the trial court is entitled to great deference. See Sanders v. Easley, 230 F.3d 679, 685 (4th Cir. 2000) (citing Illinois v. Somerville, 410 U.S. 458 (1973)). However, "[a] defendant's Sixth Amendment rights are put in jeopardy when facts appear before a jury that were not developed at trial. Such extraneous influence may threaten the guarantee of an impartial jury . . . " Gall v. Parker, 231 F.3d 265, 334 (6th Cir. 2000).

Here, the undisputed facts show that at the conclusion of the State's case, but before closing arguments, the judge was informed that legal materials from the last grand jury had been found in the jury room. See Respondent's Motion (dckt. 10), Ex. 6 at 3 (State's Proposed Order Denying Petitioner's Writ of Habeas Corpus Ad Subjiciendum). When questioned, two jurors admitted exposure to the materials and to discussing the materials between themselves. See Respondent's Motion, Ex. 8 at 394 (Trial Transcripts). The two jurors specifically discussed the disparity in penalties between a crime of violence and a paperwork fraud crime, joking that it is only a misdemeanor to shoot someone, but that it is a felony to do unlawful paperwork on a car. Id. at 398, 400. Although that was the extent of the discussion, the two jurors admitted having had this discussion within hearing of the other jurors, and they assumed that the other jurors had heard them. Id. at 402.

After the trial judge examined the two jurors in question, the defense requested a mistrial. Id. at 405. The trial judge denied the motion, but released the two jurors who had read and discussed the materials and instructed the remaining jurors on the difference between the crimes allegedly committed by the petitioner and those in the statutes left in the jury room. Id. at 405-410. Additionally, the jury was instructed to decide their verdict on the facts of the case and in consideration of the instructions given at the conclusion of trial. Id. The jurors were specifically instructed to disregard the information discussed by the two dismissed jurors. Id.

Upon an independent review of the record, the undersigned finds that the state court's adjudication of the petitioner's ground one was not contrary to clearly established federal law. Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of the petitioner's claims involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The trial court immediately questioned the jury upon learning that it may have been exposed to extraneous materials. The two jurors who had read and discussed the extraneous materials readily admitted to doing so and were dismissed. The remaining jurors were given a curative instruction and there is no evidence that the jury was biased in anyway.[4] The state trial court, as well as the state appellate court and state collateral review court, all determined that the jury was not improperly influenced by the extraneous materials, and the petitioner has failed to overcome the presumption that the trial court's findings are correct. Thus, this claim should be

---

[4] There was no evidence that the discussion between the two jurors was ever actually overheard by anyone else on the jury. However, when questioned, the two jurors admitted that their conversation took place within the hearing of the other jurors and was *likely* overheard.

denied.

B. **Ground Two - Improper Evidence**

In ground two, the petitioner asserts that the trial court erred in allowing improper 404(b) material into evidence.[5] In support of this claim, the petitioner asserts that the trial court improperly allowed evidence of a phone call to his stepdaughter, a phone call to the victim's friend, and domestic violence material for a matter that occurred on October 19, 2002. The petitioner asserts that these three prior acts of misconduct should not have been admitted pursuant to State v. McGinnis, 193 W.Va. 147, 455 S.E.2d 516 (1994).[6]

Whether evidence of prior bad acts was properly admitted under West Virginia law is an issue of state law. Therefore, ground two is not cognizable on federal habeas review and should be dismissed. See 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treatises of the United States")(emphasis added); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (it is not the province of a federal habeas court to "reexamine state-court determinations on state-law questions"); Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999) (questions of state laws and statutes are not cognizable on federal habeas review).

---

[5] Rule 404(b) of the West Virginia Rules of Evidence allows the admission of evidence of other crimes, wrongs or acts, provided they are admitted for the purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident and that the defendant is given proper notice of the State's intent to admit such evidence. Evidence of other crimes, wrongs or acts is not admissible, however, for purposes of proving the character of a person.

[6] In State v. McGinnis, 455 S. E. 2d 516 (W.Va. 1994), the West Virginia Supreme Court addressed the admissibility of evidence under Rule 404(b) of the West Virginia Rules of Evidence and established a specific standard for evaluating an offer of evidence under such rule.

## C. Ground Three - Not Allowing Petitioner to Testify or Present Witnesses

In ground three, the petitioner asserts that the trial Court erred by not allowing him to testify on his own behalf or to present witnesses. In support of this claim, the petitioner asserts that pursuant to State v. Neuman, 179 W.Va. 580, 371 S.E.2d 77 (1988),[7] the trial court had a duty to assure that the petitioner's waiver of his right to testify was knowing, voluntary and intelligent. Moreover, the petitioner asserts that the trial court was required under Neuman to advise him of his right to testify, outside the presence of the jury. The petitioner then concedes that the trial court conducted an appropriate Neuman dialogue. However, the petitioner notes that he later reconsidered his decision to not testify and addressed the Court on this issue. After hearing the petitioner, the Court allowed the petitioner the opportunity to confer with counsel. The petitioner asserts that after conferring with counsel in private, counsel told the Court that the petitioner "elected to proceed with the proceedings as they are." The petitioner agreed, the case went to the jury and the petitioner was convicted. The petitioner asserts, however, that when he elected to "proceed with the proceedings as they are," he meant to proceed to put on a defense by testifying and calling witnesses. Therefore, the petitioner asserts that he did not appropriately waive his right to testify and put on a defense and the Court erred in allowing the proceedings to continue.

A defendant in a criminal trial has a constitutional right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44, 51 (1987); United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003). Furthermore, it is the defendant who retains the ultimate authority to decide whether or not to testify. Jones v. Barnes, 463 U.S. 745, 751 (1983). Moreover, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 301

---

[7] In Neuman, the WVSCA held that a trail court must ascertain on the record that a defendant knowingly and intelligently waived his right to testify in this own defense.

13

(1973). "Of course, the accused's right to present witnesses in his defense is not without limits. For example, a court may limit the presentation of evidence if it is concerned about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Noble v. Kelly, 89 F. Supp. 2d 443, 454 (S.D. N.Y. 2000)(quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

With regard to this claim, the state habeas court found:

FINDINGS OF FACT . . .

> 7. On January 14, 2006 (sic), the Court administered the Newman (sic) dialogue and the Defendant chose not to testify.
> 8. On January 15, 2004, prior to the Court's instruction to the jury and closing argument, the State advised the Court that the Petitioner was threatening to cause a mistrial. Thereafter, the Court permitted the Petitioner, at his request, to address the Court regarding his concerns.
> 9. As reflected on pages 386 through 392 of the January 15, 2004 transcript, the Petitioner advised the Court that he was concerned that the evidence presented at trial made him look bad and would result in a guilty verdict. The Petitioner further advised the Court that he desired to call five witnesses and indicated to his counsel that he wanted to testify. Thereafter, the Court recessed for the Petitioner to consult with his counsel.
> 10. Upon the Court's return to the bench, the Petitioner advised the Court (transcript p. 392) that he elected to proceed with the proceedings as they were and did not desire to testify or call additional witnesses.
> 11. The issue regarding whether the Petitioner would testify or call witnesses having been resolved, the Court turned next to another issue that had arisen after the jury had left the courtroom at the close of the evidence.
> . . .

CONCLUSIONS OF LAW . . .

> Based upon the testimony of trial counsel and the Defendant's own mother, it appears to the Court that had the Petitioner and his alleged proposed witnesses testified and if the evidence had been found to be relevant, the testimony would have bolstered the State's case because it would have amplified the Petitioner's ill motive to the jury and

14

reinforced the Petitioner's feeling that the victim deserved to be shot.

Respondent's Motion (dckt. 10) at Ex. 6 (State's Proposed Order Denying Petitioner's Writ of Habeas Corpus Ad Subjiciendum).

Upon an independent review of the record, the undersigned finds that the state court's adjudication of Ground three was not contrary to clearly established federal law. Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of the petitioner's claims involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In this case, it is undisputed that the petitioner was informed of his right to testify and to present a defense, prior to the start of the trial. It is further undisputed that after the close of the State's case, the petitioner himself, addressed the Court and informed the trial judge that he wished to testify and to present witnesses in his defense. The trial court allowed the petitioner the opportunity to confer with counsel. Afterwards, counsel stated on the record that the petitioner elected to proceed with the proceedings as they were and the petitioner agreed. The trial court understood this to mean that the petitioner wanted to proceed without testifying and without presenting witnesses. Therefore, the case proceeded to jury and the petitioner was convicted.

However, at the petitioner's state habeas evidentiary hearing, the petitioner testified that when he conferred with counsel, he was told by counsel that he would get a chance to testify. Respondent's Motion (dckt. 10), Ex. 10 at 19-20. Therefore, the petitioner believed that when he agreed to proceed with the proceedings as they were, he thought he was agreeing to testify and

15

present witnesses.  Id.  On the other hand, the petitioner's counsel testified as follows:

> And Mr. Marshall had wanted very much to testify, but he came around to the opinion and understanding that it was not in his best interest.
> During the trial, close to the very end, I cannot recall whether it was after everybody rested or not, I know I came in and he raised an issue with me, 'I want to testify'.  And I said, 'What do you mean, Scott?'  And it really took me for a loop, because I think we were actually done and just ready to do closing statement and so forth.  I can't recall specifically, but he and I talked and once again he basically came around to understanding and agreeing that it was in his best interest not to.
> We had gotten, I think, about as good a run at that jury as we were going to get.  It wasn't pretty, but it was as good as we could have hoped for, given the facts with which we were dealing. . . .
> So he agreed that he shouldn't testify.
>
> . . .
>
> Q.  Did you all again discuss that day whether or not witnesses should be called in his defense.
> A.  Absolutely.
> Q.  And who finally made the decision whether or not to call witnesses?
> A.  Mr. Marshall made the decision.  I never make the decision as to who testified at one of my clients' trial.  I give them my advice.  It's their liberty that's at stake and my client, assuming that I know someone is not going to give perjured testimony, okay, but other than that, they have the final say.  All right.
> And that's especially true in my practice as a public defender.  If I'm in private practice I could tell my client that, "I disagree with you.  I quit", but here I have to give them the final say and some times it produces some ridiculous results.
> But it's their liberty interest and they get the final word.
>
> . . .
>
> Q.  Okay.  And then when you came back to open court you came back and said, "your Honor, Mr. Marshall has elected to proceed with the proceedings as they are"?
> A.  That's correct.
> Q.  No what did you mean by that?  Did you mean that he wanted to go ahead and testify and present his five witnesses?

16

>   A. No.
>   Q. As he had just said right before you went to the recess?
>   A. No. I meant that he wished to proceed just as things went on and we were done. He had acceded to my advice, the case should continue on. This was his best shot, but we talked about a number of things beyond his witnesses and so forth, you know, the entire trial. And in essence that I believe this was as good a shot as he was going to get.
>   Q. And do you remember Mr. Marshall's response to the Court's inquiry, "Is that correct, Mr. Marshall?" He said, "Yes, sir"?.
>   A. I believe that's what he said, because we went on.
>   Q. And it's your belief that he was agreeing to end the testimony there?
>   A. Absolutely.
>
>   . . .
>
>   Q. Now, Mr. Kent, did you ever think that it might be important to inquire of Mr. Marshall when you came back into open court as to whether or not he was really waiving his right to present evidence and -- in the form of witnesses and waiving his right to testify?
>   A. I had done that. I had not done it on the record, but I had done that. I talked with him and we had come to an agreement, and I was fully satisfied.
>   Q. Okay. And you believe that if he thought that you were going to come back in there and put witnesses on and he was going to testify, he was mistaken as to what your agreement was?
>   A. I am-- he'd have to be living in an alternate universe or some other reality to have that belief. There was absolutely no confusion on the issue, of that I'm certain.

Respondent's Motion (dckt. 10), Ex. 10 at 26-58 (testimony of James Kent).

At the state evidentiary hearing, there was conflicting testimony with regard to what the petitioner and his counsel discussed and what decision they had made. It is clear, however, that the state habeas court found the testimony of the petitioner's counsel more credible when it made its findings of facts and conclusions of law. Thus, the petitioner essentially challenges the factual determination made by a state court with regard to this issue. However, the petitioner has failed to show that the State court's factual finding was "based on an unreasonable determination of the

facts." 28 U.S. C. § 2254(d)(2). Neither has the petitioner rebutted, by clear and convincing evidence, the presumption that the state court's determination on this factual issue is correct. <u>Tucker v. Ozmint</u>, <u>supra</u>. Accordingly, ground three should be denied.

**D.   Ground Four - Ineffective Assistance of Counsel**

In ground four, the petitioner asserts that counsel was ineffective because he did not put the petitioner on the witness stand and did not call the witnesses the petitioner requested. In support of this claim, the petitioner incorporates the arguments set forth in ground three, and additionally states that once he expressed a desire to testify and put on witnesses, counsel was obligated to do so even if he disagreed with the petitioner.

With regard to ineffective assistance of counsel claims, counsel's conduct is measured under the two part analysis outlined in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. <u>Id.</u> at 688. In reviewing the reasonableness of counsel's performance, "judicial scrutiny must be highly deferential." <u>Id.</u> at 689-90. Second, if the Court finds that counsel's performance was unreasonable, the petitioner must then demonstrate that he was prejudiced. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is a one that is "sufficient to undermine confidence in the outcome." <u>Id.</u>

With regard to this claim, the state habeas court found:

> The Petitioner asserts that he was deprived of effective assistance of counsel in that his trial counsel did not permit him to testify at trial or call additional witnesses in his defense. To the contrary, the trial transcripts and the testimony of trial counsel at the habeas evidentiary hearing clearly establish that the Petitioner was informed by trial counsel of the adverse effect his testimony and the testimony of

18

> proposed witnesses would make on his case. The petitioner made the ultimate decision to not testify and to not call additional witnesses.
>
> . . .
>
> Based upon the testimony of trial counsel and the Defendant's own mother, it appears to the Court that had the Petitioner and his alleged proposed witnesses testified and if the evidence had been found to be relevant, the testimony would have bolstered the State's case because it would have amplified the Petitioner's ill motive to the jury and reinforced the Petitioner's feeling that the victim deserved to be shot. Thus, no reasonably qualified attorney would have recommended that his client choose to testify or present witnesses under these circumstances.
>
> In addition, even if the Petitioner had testified and presented witnesses, the State provided overwhelming evidence of Petitioner's guilt, including the victim's recounting of the events which transpired at her home the morning of the shooting, the Petitioner's confession and the Petitioner's flight after the shooting. Since the evidence of the Petitioner's guilt was so overwhelming, the Court must conclude that the standard of *Strickland v. Washington* has not been met as the Petitioner has not shown that his legal representation was inadequate, nor that he was prejudiced thereby.

Respondent's Motion (dckt. 10), Ex. 6 at 5-7 (State's Proposed Order Denying Petitioner's Writ of Habeas Corpus Ad Subjiciendum).

Upon an independent review of the record, the undersigned finds that the state court's adjudication of ground four was not contrary to clearly established federal law as the state court specifically cites Strickland. Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of the petitioner's claims involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[8]

---

[8] See ground three, *infra*.

## V. Recommendation

For the reasons set forth in this Opinion, it is recommended that the respondent's Motion for Summary Judgment (dckt. 10) be **GRANTED** and the petitioner's § 2254 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: June 18, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE